IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEMETRIUS DEMBY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 11-29-GMS |
| ) | |
| DAVID PIERCE, Warden, and ) | |
| ATTORNEY GENERAL OF ) | |
| THE STATE OF DELAWARE, ) | |
| ) | |
| Respondents.[1] ) | |

Demetrius Demby. *Pro se* petitioner.

Gregory E. Smith, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

March 25, 2014
Wilmington, Delaware

---

[1] Warden David Pierce replaced Warden Perry Phelps, an original party to this case. *See* Fed. R. Civ. P. 25(d).

Sleet, Chief Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Demetrius Demby ("Demby"). (D.I. 1; D.I. 10) For the reasons discussed, the court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts leading to Demby's arrest and conviction are as follows:

> On April 15, 2006, Demby and another person were traveling westbound on Fourth Street. Two Wilmington police officers, driving in the opposite direction on Fourth Street, saw that Demby was not wearing a seatbelt. The officers reversed direction and began to follow him. Officer David Ledesma ran the license plate and determined that the car was registered to Demby and that Demby had a suspended license. Officer Ledesma later explained that they had planned to stop him regardless because he was not wearing his seatbelt. At that time, one of the officers saw Demby "make a movement towards the middle console" before coming to a complete stop four blocks later.
>
> Officer Ledesma approached the driver's side window and asked Demby for his license, registration, and insurance. Demby told him that he was not sure whether his license was suspended or not. After determining that Demby was driving the vehicle, Officer Ledesma returned to his car and ran his name through DELJIS. He discovered that Demby had outstanding capiases and his license had been suspended. The officers arrested Demby and searched his vehicle incident to that arrest. The other officer, Corporal Donald Cramer, found twenty one bags of a chunky white substance of what he believed was crack cocaine. Demby waived his *Miranda* rights and admitted that the drugs were his and that his passenger had nothing to do with them.

*Demby v. State*, 945 A.2d 593 (Table), 2008 WL 534273 (Del. Feb. 28, 2008). Corporal Cramer field tested the drugs and determined them to be cocaine. The weight of the drugs and the packaging was 4.9 grams. *Id*.

On May 30, 2006, Demby was indicted on charges of possession with intent to deliver cocaine, maintaining a vehicle for keeping controlled substances, and driving without a seatbelt. (D.I. 18) In September 2006, Demby filed a motion to suppress the drug evidence, which the Superior Court denied after holding an evidentiary hearing. In April 2007, a Superior Court jury

convicted Demby of all charges. Demby was sentenced as an habitual offender to natural life at Level V for the possession with intent to deliver cocaine conviction, and to one year at Level V, suspended for one year at Level II, for the maintaining a vehicle conviction. A twenty-five dollar fine was imposed for the seat belt charge. *Id.*

In March 2009, Demby filed a motion for post-conviction relief under Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 18) The Superior Court denied the Rule 61 motion on October 29, 2009, and the Delaware Supreme Court affirmed that decision. *See Demby v. State*, 11 A.3d 226 (Table), 2010 WL 5342969 (Del. Dec. 21, 2010).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but

3

procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

## C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011). As recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

Finally, when reviewing a habeas claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to

---

[1] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

Demby asserts the following eight grounds for relief: (1) the drug evidence should not have been admitted at trial because it was not authenticated and the State failed to establish an adequate chain of custody; (2) the trial court should have suppressed evidence unrelated to the basis for the motor vehicle stop; (3) the attorneys representing Demby during the suppression hearing and direct appeal provided ineffective assistance; (4) trial counsel improperly represented Demby while operating under a conflict of interest; (5) Demby was not *Mirandized* before he told the police that he owned the drugs found during the vehicle stop; (6) all African-American jurors were improperly excluded during the jury selection; (7) actual innocence; and (8) the arresting officer committed perjury by testifying that Demby admitted ownership of the drugs. The State contends that the court should deny the petition in its entirety because claims one and two assert state law issues that are not cognizable on federal habeas review, claim three fails to warrant relief under § 2254(d), and claims four, five, six, and eight are procedurally barred. The State does not address claim seven as an independent argument.

### A. Claim One: Evidentiary Error

In claim one, Demby contends that the trial court should not have admitted the drugs into evidence because the State failed to establish a chain of custody and failed to authenticate the drugs as required by Delaware law. Notably, Demby does not contend that this alleged state evidentiary error violated his federal constitutional rights.

6

It is well-established that "[s]tate courts are the ultimate expositors of state law,"[1] and claims based on errors of state law are not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, the court will deny claim one for failing to assert a proper basis for federal habeas relief.

### B. Claim Two: Illegal Search and Seizure

In claim two, Demby contends that the trial court wrongfully denied his motion to suppress the drug evidence that was seized when the police stopped his vehicle. Demby asserts that the police violated his federal and state constitutional protections against unreasonable searches and seizures because they stopped him on the pretext of a motor vehicle violation when their intent was to conduct a non-traffic related investigation.

The State contends that claim two asserts an issue of state law that is not cognizable on federal habeas review. While the court agrees that claim two does not present a proper issue for federal habeas review, the reason for this conclusion is not because the claim asserts an issue of state law but, rather, because the claim asserts a violation of Demby's Fourth Amendment rights. Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), a federal habeas court cannot review a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. *Id.*; *see also Wright v. West*, 505 U.S. 277, 293 (1992). A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1980); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d

---

[1] *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

7

Cir. 1980). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state court from fully and fairly hearing that Fourth Amendment argument. *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

Here, the record reveals that Demby had a full and fair opportunity to litigate his Fourth Amendment claim. He filed a pre-trial motion to suppress pursuant to Rule 41 of the Delaware Superior Court Rules of Criminal Procedure, which the Superior Court denied after a hearing. He then filed a direct appeal challenging that decision, and the Delaware Supreme Court affirmed the Superior Court's judgment. To the extent Demby contends that the Delaware Supreme Court erred in its decision, the issue as to whether a state court correctly denied a suppression motion is irrelevant when determining if the petitioner had a "full and fair opportunity" to litigate the claim. *See Marshall*, 307 F.3d at 82 ("an erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar."). Accordingly, the court will deny claim two as barred from federal habeas review.

### C. Claim Three: Ineffective Assistance of Counsel

Demby was represented by three different attorneys during his criminal proceeding. In claim three, Demby contends that the attorney who represented him during the suppression hearing was ineffective for failing to call his uncle as a witness and also for failing to get the drug evidence suppressed. Claim three also alleges that the attorney who represented Demby on direct appeal was ineffective for failing to raise the following arguments: (1) Demby's statement to police was obtained in violation of his *Miranda* rights; (2) the State violated *Batson v. Kentucky*, 476 U.S. 79 (1986) by improperly using its peremptory challenges to exclude African-Americans from the jury pool; (3) the attorney representing Demby during the suppression

8

hearing provided ineffective assistance; and (4) a police officer committed perjury by testifying that Demby admitted owning the drugs found in the car.

As an initial matter, the court notes Demby never presented his ineffective assistance allegations concerning appellate counsel to the Delaware courts in his Rule 61 proceeding. Demby also did not present in his Rule 61 proceeding his complaint that the attorney representing him during the suppression hearing should have called his uncle as a witness. Demby does not provide any cause for this default, and he also fails to demonstrate that the merits of these allegations must be reviewed in order to avoid a miscarriage of justice. Accordingly, the court will deny as procedurally barred Demby's allegations regarding appellate counsel and his contention regarding counsel's failure to call his uncle as a witness during the suppression hearing.

Demby's Rule 61 motion did, however, contain the remaining instant allegation that the attorney who represented him during the suppression hearing was ineffective because he did not succeed in getting the evidence suppressed. Both the Superior Court and the Delaware Supreme Court denied this allegation as meritless. As such, habeas relief will only be warranted if the Delaware Supreme Court's denial of this allegation was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the

9

second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Here, the Delaware Supreme Court specifically applied the *Strickland* standard when it affirmed the Superior Court's denial of Demby's ineffective assistance allegation regarding the attorney who represented him during the suppression hearing. Therefore, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Demby's case. When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to Demby's ineffective assistance of counsel allegations through "doubly deferential" lens. *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). Notably, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

10

Contrary to Demby's belief, the fact that counsel filed a suppression motion, but did not succeed, does not demonstrate that counsel's performance was deficient. Significantly, in his Rule 61 affidavit, the attorney who represented Demby during the suppression hearing states that he asked all pertinent questions, and made all the viable arguments, to advance Demby's position regarding the constitutionality of the stop, detention, search, and seizure which resulted in the discovery of the illegal drugs leading to his arrest. (D.I. 20, App. to State's Ans. Br. in *Demby v. State*, No.141,2010, at B-16) Demby's vague and unsupported contentions in this proceeding do not overcome the strong presumption that counsel's representation was professionally reasonable.

In short, after viewing the Delaware Supreme Court's denial of Demby's claim regarding the attorney who represented him during the suppression hearing through the doubly deferential lens applicable on habeas review, the court cannot conclude that the Delaware Supreme Court unreasonably applied *Strickland* in reaching its decision. Accordingly, the court will deny the remaining portion of claim three for failing to satisfy § 2254(d).

### D. Claims Four, Five, Six, and Eight: Procedurally Barred

In claim four, Demby contends that the trial court violated his constitutional rights by permitting trial counsel to represent him while operating under a conflict of interest caused by their hostile relationship. Claim five asserts that the police did not inform Demby of his *Miranda* rights before he admitted ownership of the drugs found in the car. Claim six asserts that the jury selection procedures violated the Equal Protection Clause and *Batson v. Kentucky*, 476 U.S. 79 (1986) because all African-American jurors were removed from the jury pool. And finally, in claim eight, Demby contends that he never admitted ownership of the drugs found in

the car. As such, he argues that the arresting officer committed perjury when by testifying about Demby's admission.

Demby did not present claims four, five, six, and eight to the Delaware Supreme Court on direct appeal or on post-conviction appeal. At this juncture, Delaware Superior Court Criminal Rule 61(i)(1), (2) and (3) would bar Demby from presenting these issues to the Delaware state courts in a new Rule 61 motion. *See Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding); *Bright v. Snyder*, 218 F. Supp. 2d 573, 580 (D. Del. 2002)(Rule 61(i)(3) would bar the Superior Court from considering the claim because the petitioner did not raise the claim in the proceedings leading to his conviction). Consequently, claims four, five, six, and eight are procedurally defaulted, meaning that the court cannot review their merits absent a showing of cause and prejudice, or that a miscarriage of justice will occur absent such review.

Demby attempts to establish cause for his procedural default by blaming appellate counsel for not raising these four claims on direct appeal. However, as previously discussed, Demby's argument regarding appellate counsel's ineffective assistance is itself procedurally defaulted. *See supra* at 9. Therefore, appellate counsel's performance cannot excuse Demby's procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 453-54 (2000).

In the absence of cause, the court will not address the issue of prejudice. Demby's default also cannot be excused under the miscarriage of justice exception to the procedural default doctrine because he has failed to provide this court with any new reliable evidence of his actual innocence. Given these circumstances, the court will deny claims four, five, six, and eight as procedurally barred.

### E. Claim Seven: Actual Innocence

In claim seven, Demby asserts habeas relief is warranted because he is actually innocent of the charges against him. Although the Supreme Court has held that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural [or timeliness] bar to relief," it has not resolved whether a prisoner is entitled to habeas relief for a freestanding claim of actual innocence. *See McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013); *see also Sistrunk v. Rozum*, 674 F.3d 181, 187 n.2 (3d Cir. 2012). Notably, a petitioner can only satisfy the "credible showing" standard for such gateway claims with new reliable evidence that was not presented at trial. *House*, 126 S.Ct. at 2077; *Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004). Given the absence of clearly settled federal law establishing the cognizability of a freestanding "actual innocence" claim, the court will deny claim seven for failing to present a proper basis for habeas relief.

Nevertheless, even if the court were to consider the instant argument as presenting a proper basis for federal habeas relief, the argument would be unavailing. In *Herrera v. Collins*, 506 U.S. 390, 417 (1993), the Supreme Court raised the possibility of recognizing "actual innocence" claims as cognizable issues in capital cases, but advised that the burden of showing actual innocence in order to establish a freestanding claim would be higher than the burden to make out a gateway claim of actual innocence. *Id.* In this case, Demby has not even satisfied the burden for establishing a gateway claim of actual innocence because he has not proffered any new reliable evidence of his actual innocence that was not presented at trial. Given these circumstances, Demby's attempt to establish a freestanding claim of actual innocence necessarily fails.

13

### F. Motion for an Evidentiary Hearing or Attorney Affidavits

During the pendency of this proceeding, Demby filed a motion requesting the court to either conduct an evidentiary hearing or require the three attorneys who represented him to file affidavits responding to his ineffective assistance of counsel allegations. (D.I. 29) Given the court's conclusion that the instant petition does not warrant relief, the court will deny the motion as moot.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Demby's petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Demby's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.